# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOMONIQUE HINES,<br><br>            Plaintiff,<br>    vs.<br><br>KFC U.S. PROPERTIES, INC.,<br><br>            Defendant. | CASE NO. 09cv2422 JM(POR)<br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION |

Plaintiff Domonique Hines, and all similarly situated current and former employees of KFC U.S. Properties ("KFC"), move for class certification pursuant to Fed.R.Civ.P. 23. Defendant KFC opposes the motion. For the reasons set forth below, the court grants in part and denies in part the motion for class certification.

## BACKGROUND

On October 2, 2009 Plaintiff Hines commenced a putative class action in the Superior Court for the County of San Diego. KFC, the only defendant, timely removed the action to federal court based upon the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §1332. Plaintiff Hines is a citizen of California who seeks to represent a class of similarly situated individuals, identified as current or former employees of KFC in the State of California. (Compl. ¶2). KFC asserts that it is incorporated in Delaware with its principal place of business in Kentucky. (Notice of Removal ¶8).

/ / /

/ / /

**The Claims**

In broad brush, Plaintiff alleges that KFC acted in furtherance of its

> "policies and practices of not paying Plaintiffs all wages earned and due, through methods and schemes which included but are not limited to, failing to pay overtime premiums; failing to provide rest and meal periods; failing to properly maintain records; failing to provide accurate itemized statements for each pay period; and requiring, permitting or suffering the employees to work off the clock, in violation of California Labor Code and Industrial Welfare Commission ("IWC") Orders.

(Compl. ¶6). Plaintiff brings this action on behalf of potentially 14,200 class members who were employed by KFC at its approximately 250 California locations during the period October 2, 2005 through October 2, 2009. Based upon the complaint's allegations, Plaintiff alleges seven claims for (1) failure to provide meal periods in violation of Cal. Labor Code §226.7; (2) failure to provide rest periods in violation of Cal. Labor Code §226.7; (3) failure to pay overtime compensation in violation of Cal. Labor Code §510, 1194; (4) failure to pay minimum wages in violation of Cal. Labor Code §§1194, 1197; (5) failure to pay all wages due to discharged or quitting employees in violation of Cal. Labor Code §§201-203; (6) failure to provide employees accurate itemized statements in violation of Cal. Labor Code §226, 1174, 1174.5; and (7) unfair business practices in violation of Cal. Bus. & Prof. Code §17200 et seq.

**The Proposed Class**

Plaintiff seeks class certification of a class consisting of

> All current and former non-exempt employees of KFC U.S. Properties, Inc. who were employed in California in the position of "Team Member" at any time since October 2, 2005.

(Motion at p.2:3-4). Plaintiff's class claims broadly encompass three distinct claims. Plaintiff argues that the class was not provided with (1) the required meal breaks, (2) the required rest breaks, and (3) full compensation for those who worked the closing shift, the so-called off-the-clock claim. For the reasons set forth herein, the court concludes that a single class is unmanageable. However, the court treats these claims as three separate subclasses consisting of a meal break subclass, a rest period subclass, and a closing shift subclass.

Team Members are non-managerial hourly employees who hold positions in either food service or customer service. (Sha Decl. Exh. 1). Plaintiff represents that KFC employs identical timekeeping systems at all its restaurants and enforces uniform timekeeping requirements. Team

1  Members are required to clock in and out of the timekeeping system using the cash registers at each
2  restaurant. (Sha Decl. Exh. 4).  Plaintiff represents that KFC has the uniform policy of requiring Team
3  Members to obtain permission from a manager or supervisor prior to taking a meal or rest break.
4       At the end of each shift, Plaintiff represents that KFC requires each restaurant to close their
5  cash registers so that the "end of the day" process can begin.  The end of day process transfers
6  information generated and stored in the cash registers. During this time, Team Members cannot clock
7  out at the end of the shift because of the running of the end of day process.  In order to account for
8  Team Members' hours, the manager on duty estimates the amount of time to be worked by each
9  closing shift Team Member and enters the estimated time in the payroll system.  Plaintiff argues that
10 this timekeeping procedure fails to accurately track the hours of the Team Members.
11      Plaintiff seeks injunctive relief and nominal, compensatory, punitive and restitution damages
12 arising from the alleged wage and hour violations, as well as an award of attorney's fees and costs.
13 (Compl. at pp.9:25-10:12).  The parties have engaged in extensive discovery regarding, among other
14 things, class certification issues.

15 **Procedural Posture**

16      On October 29, 2010, KFC removed this action to federal court, asserting original jurisdiction
17 pursuant to the CAFA. On February 16, 2010, this court denied Plaintiff's motion to remand and
18 denied KFC's motion for a convenience transfer to the Central District of California.

19                             **DISCUSSION**

20 **Legal Standards**

21      It is within this court's discretion to certify a class.  Bouman v. Block, 940 F.2d 1211, 1232
22 (9th Cir. 1991).  Under Rule 23(a), the class must satisfy four prerequisites:

23          (1) numerosity of [parties], (2) common questions of law or fact predominate, (3) the
         named [party's] claims and defenses are typical, and (4) the named [party] can
24          adequately protect the interests of the class.

25 Hanon v. Dataproducts, 976 F.2d 497, 508 (9th Cir. 1992). In addition to satisfying the requirements
26 of Rule 23(a), Plaintiff must satisfy at least one of the types of class actions identified in Rule 23(b).
27 Here, Plaintiff argues that the class satisfies both Rule 23(b)(2) (the class is subject to common
28 policies or unlawful acts, justifying injunctive relief) and Rule 23(b)(3) ( questions of law or fact

1  common to the members of the class predominate over any questions affecting only individual
2  members, and a class action is superior to other available methods for the fair and efficient
3  adjudication of the controversy).

4       The party seeking certification bears the burden of showing that each of the four requirements
5  of Rule 23(a), and at least one requirement of rule 23(b), have been satisfied. <u>Dukes v. Wal-Mart</u>
6  <u>Stores, Inc.</u>, 603 F.3d 571, 580 (9th Cir. 2010) (en banc).  As noted by the Ninth Circuit,

> When considering class certification under rule 23, district courts are not only at liberty to, but must, perform a rigorous analysis to ensure that the prerequisites of Rule 23(a) have been satisfied. It does not mean that a district court must conduct a full-blown trial on the merits prior to certification. A district court's analysis will often, though not always, require looking behind the pleadings, even to issues overlapping with the merits of the underlying claims.

11  <u>Id</u>. at 581.  In making this showing, the plaintiff must submit evidence to support class certification
12  under Rules 23(a) and (b).  <u>Doninger v. Pacific Northwest Bell, Inc.</u>, 564 F.2d 1304, 1308-09 (9th Cir.
13  1977).  If the court is not satisfied that all elements of class certification are satisfied, class
14  certification should be denied.  <u>Gen. Tel. Co. v. Falcon</u>, 457 U.S. 147, 161 (1982).

15  **Rule 23(a)**

16      <u>Numerosity</u>

17       The parties do not dispute that the class, consisting of approximately 14,000 current and former
18  employees, is so numerous that joinder of all class members is impracticable.

19      <u>Commonality</u>

20       Commonality "focuses on the relationship of common facts and legal issues among class
21  members." <u>Id.</u> at 599.  "The fact that there is some factual variation among the class grievances will
22  not defeat a class action . . . . A common nucleus of operative facts is usually enough to satisfy the
23  commonality requirement of Rule 23(a)(2)."  <u>Rosario v. Livaditis</u>, 963 F.2d. 1013, 1018 (7th Cir.
24  1992).  To justify class action treatment, there must be issues "common to the class as a whole" and
25  the relief must "turn on questions of law applicable in the same manner to each member of the class."
26  <u>General Tel. Co. Of Southwest v. Falcon</u>, 457 U.S. 147, 155 (1982).  As noted by the Supreme Court,
27  the commonality and typicality requirements of Fed.R.Civ.P. 23(a) "tend to merge . . . [but both] serve
28  as guideposts for determining whether . . . maintenance of a class action is economical and whether

1 the named plaintiff's claim and the class claims are so interrelated that the interests of the class
2 members will be fairly and adequately protected in their absence." Gen'l Tel., 456 U.S. at 157 n.13.

4 Before addressing this prerequisite, the court will briefly summarize the evidence supporting
5 the uniform timekeeping policies and then discuss three distinct subsets of Plaintiff's wage and hour
6 claims: the meal break subclass, the rest period subclass, and the closing shift subclass.

7 Plaintiff comes forward with evidence to show that KFC employs a uniform electronic
8 timekeeping system called MERIT. Each Team Member must clock out and in for their meal breaks.
9 In the event a Team Member fails to clock out for a meal period, a restaurant manager adjusts the
10 timekeeping records to make sure that the break is properly reflected. Further, KFC employs a payroll
11 system to provide "an additional layer for ensuring the accuracy of KFC's time records," (Motion at
12 p.5:14-15), by means of a program called People Soft to process payroll. The software "creates and
13 subsequently reviews varying reports in order to assess whether wages are being paid accurately and
14 timely." (Motion at p.6:1-2). Further, KFC adopted the "auto pay" system in 2008, a system which
15 is intended to identify any missed meal period and to compensate the employee for the missed meal
16 period. The "auto pay" system automatically provides employees with one additional hour of
17 compensation at their regular rate each time an employee works a shift of six hours and more and does
18 not record a meal period. KFC instigated this policy in January 2008 and by June 2008 all its KFC-
19 owned stores used this system. (Griffin Depo at 35:11-18).

20 KFC provides training to its managerial and non-managerial employees concerning KFC's
21 break and meal policies. The new hire training materials inform employees that they are entitled to
22 meal and rest periods in accordance with state law. (Griffin Depo. at 33:15-21). KFC also identifies
23 company policies whereby employees are provided the bi-monthly opportunity to review all time
24 punches, including those entered by a manager to account for otherwise unaccounted time. (Hines
25 Depo. at 182:16-25; Baez Depo 59:1-5)

26 **(a) Missed, Interrupted, and Late Meal Periods**

27 Plaintiff argues that there are several common issues with respect to the meal breaks: whether
28 the class received the required meal break, whether the written waiver of meal breaks between five

and six hours contained in the employment agreements of Class Members is enforceable; whether KFC maintained accurate records of all meal breaks; and whether KFC had the legal duty to affirmatively ensure that the employees take the meal break (as opposed to simply making the meal break available to employees).

In California, "[n]o employer shall employ any person for a work period of more than five hours without a meal period of not less than 30 minutes." WC Wage Order 5-2001. If an employer does employ a worker for more than five hours[1] without an uninterrupted meal period, Plaintiff argues that the employer must pay "one additional hour of pay at the employee's regular rate of compensation." Labor Code §226.7(b). Plaintiff identifies that the meal breaks do not occur at a fixed time every day. Rather, the employee must first request permission from a manager or supervisor prior to taking the meal break. (Griffin Depo. at 145:22-146:10). Further, each employee was required to punch in and out for meal breaks.

In support of commonality, Plaintiff comes forward with evidence to show that KFC, for the above-stated reasons, employs a uniform electronic timekeeping system. From the sampling of data, Plaintiff's expert reaches several conclusions with respect to the failure of KFC to provide meal breaks: a review of the time records reveals 78.7% of the restaurants with shifts of five to six hours in length experienced one or more missed meal periods, (Woolfson Decl. ¶B). He also represents that 83.21% of employees who worked a shift over five hours did not receive a meal period and 71.45% of employees who worked a shift between six and ten hours in length similarly did not receive a meal break. However, for the reasons set forth in the rulings on the evidentiary objections, the court does not consider Mr. Woolfson an expert for purposes of statistical analysis. Rather, Mr. Woolfson is an expert in the compilation and analysis of databases, based upon his declaration which sets forth his qualifications and the methods and procedures adopted to analyze the data. At a minimum, the Woolfson declaration gives rise to an inference that the time cards of the meal break subclass uniformly reflect whether or not an employee clocks in or out for a meal break (i.e. each employee is required to punch in and punch out for meal breaks). The court notes that many of Plaintiff's claims

---

[1] KFC argues that the employment agreement waives the right to a meal break between five and six hours.

are based on the argument that KFC did not provide meal breaks to individuals who worked less than six hours without a break.[2]  Further, declarations by putative class members establish that they were not compensated for those meal breaks which were cut short by supervisors. (Anderson Decl. ¶13).

While KFC comes forward with evidence to controvert Plaintiff's meal break claims - - per written agreement the employees waived the meal break for periods under six hours, the "auto-pay" system compensates all employees who worked six hours or more without recording a meal break (Sugg Decl. Exh. 16) - - it is not the role of this court to resolve factual disputes on a motion for class certification.  See Dukes, 603 F.3d at 587 ("it is the plaintiff's theory that matters at the class certification stage, not whether the theory will ultimately succeed on the merits").  "[I]t is improper to advance a decision on the merits to the class certification stage."  Moore v. Hughes Helicopters, Inc., 708 F.2d 475, 480 (9th Cir. 1983).  KFC also argues that the commonality requirement is not satisfied because "what Plaintiff truly alleges is that KFC's practices did not match its policies - - a question that will require individual analysis for the scores of restaurant locations and thousands of employees." (Oppo. At p.14:5-7).  KFC also represents that it makes 30 minute meal periods available to all its employees and that 90% of meal periods for shifts over six hours are taken and for those that are not, it automatically compensates employees with an hour of pay.  These merits-based arguments fail to establish that the meal break issue is not a common issue subject to common proof, consisting of the time and payroll records, as represented by Plaintiff's expert Mr. Woolfson.

In sum, the court concludes that there are common issues with respect to the meal break subclass, including whether the subclass received the required meal break; whether the written waiver of meal breaks between five and six hours contained in the employment agreements of Class Members is enforceable; whether KFC maintained accurate records of all meal breaks; and whether KFC had the legal duty to affirmatively ensure that the employees take meal breaks.

**(b) Missed, Interrupted, and Late Rest Periods**

Employers in California are required to provide employees with a compensated 10-minute rest period every four hours worked. Labor Code §226.7.  Plaintiff asserts that KFC has the general policy of requiring its employees to clock in and clock out for each break.  Plaintiff concludes that this claim

---

[2] The court notes that there are common factual and legal disputes concerning the validity of the six hour meal break waiver signed by certain KFC employees.

is subject to common proof by reviewing time records and represents that, "on average, three-quarters of the time workers are working through their rest breaks." (RT at p.10:5-6). Plaintiff also submits various employee declarations to the effect that they were unable to take rest breaks when the restaurants were too busy. (Ramirez Decl. ¶11; Anderson Decl. ¶20). Plaintiff also argues that "KFC failed to have any policy or procedure to pay Team Members an extra hour of pay for missed, interrupted, or late rest periods." (Motion at p.11:16-17). In light of the evidence submitted in support of this claim, there is a legitimate inference that KFC policies regarding missed, interrupted, and late rest periods present shared common questions of law and fact.

KFC comes forward with evidence in an attempt to show that managers of its stores use different systems for tracking the rest periods of its employees.[3] For example, in one store, employees utilize a timer to track rest periods, rather than clocking in and out, (Laguna Depo at 92:13-25); another store uses a dry eraser board to inform employees of their breaks, (Matthiesen Depo. at 50:25-51:25); and another store uses a "shift planner" or daily schedule to manage employee breaks. (Dangel Decl. ¶12). As the managers and supervisors at different KFC locations use different means to track rest break periods, KFC concludes that Plaintiff must demonstrate that there are common factual issues amongst the class members. The court notes that it is not the function of this court to weigh the parties' evidence on a motion for class certification. Rather, this and related merits-based arguments are better argued in the context of an evidentiary motion or addressed at the time of trial.

In sum, the court concludes that there are shared common factual issues with respect to the rest period subclass.

### (c) The Closing Shift

Plaintiff explains that KFC requires each of its restaurants to close their cash registers so that the "end of the day" process can begin. During this process, information is transferred from the cash registers to KFC's main computer. The transfer of data prevents employees from clocking out. In order to account for the employees' time, the manager on duty would estimate the remaining time for each employee. (Motion at p. 12:3-9; Oppo. at p.9:11-19). In support of this theory, Griselda Godina

---

[3] The court notes that this argument is more appropriately addressed in context of an analysis under Rule 23(b)(3) (questions of law or fact common to the members of the class predominate over any questions affecting only individual members).

declares that she routinely worked beyond closing time and was not compensated for up to 10 hours per week, (Godina Decl. ¶11), and, for example, Alejandro Bolanos declares that he routinely worked for 60 to 90 minutes each day beyond closing time and was not compensated for this time. (Bolanos Decl. ¶12). Plaintiff also submits the declarations of Dr. Abbott and Mr. Woolfson in support of the commonality of Plaintiff's claims. While Dr. Abbot declares that it is "feasible" to design a representative statistical model, the court concludes that the "feasibility" of a future study to support the existence of a present fact is not sufficiently probative of Plaintiff's closing shift claim.[4]

In light of the evidence submitted in support of this claim, there is a legitimate inference that there are shared common factual issues with regard to certain KFC employees who commonly performed work-related duties off-the-clock and were not compensated for that time.[5] KFC raises the merits-based argument that its managers accurately estimate the time to be worked beyond closing and that the time is adjusted to account for the employee working beyond the estimated amount. (Griffin Depo. 87:19-88:6). KFC also affords employees the opportunity to review all of the time punches, including those entered by a manager, and acknowledge that they have reviewed and agree with the time indicated on the time records. In the event an employee disagrees with the time records, the employee may speak with the manager or place an anonymous call to a toll free number if they have any questions about the hours worked. In short, KFC argues that its policies regarding off the clock work are strictly enforced and accurate. (Lagunas, a supervisor, testifies that his employment at KFC was terminated once KFC learned that he permitted an individual to work off-the clock, Lagunas Depo. at 72:17-73:7; Oppo. at p. 9:3-10). As previously noted, it is inappropriate for the court to resolve factual disputes on a motion for class certification.[6]

In sum, the court concludes that there are shared common factual issues with respect to the

---

[4] For the reasons set froth in the Evidentiary Section, the declaration of Mr. Woolfson is not significantly probative of Plaintiff's off-the-clock claims.

[5] Whether common issues predominate over any individualized issue is discussed in relation to Rule 23(b)(3).

[6] The court notes that resolution of disputed genuine issues of material fact may impact the future viability of this class action. As noted in Califano v. Yamasaki, 442 U.S. 682, 701 (1979), class "certification is proper only when a determinative critical issue overshadows all other issues." In the event that individual factual disputes arise with respect to each employee and overshadow the common issues identified herein, the class action procedure may not provide the anticipated efficiencies.

closing shift.

Typicality

The focus of this requirement is on the similarity between the named plaintiff's legal and remedial theories and those of the class. Dukes, 571 F.3d at 613. A representative's claims are typical if they are reasonably coextensive with those of absent class members, they need not be substantially identical. Id.

KFC argues that the claims of Plaintiff Hines are not typical of the class. With respect to the meal break and rest period subclass, KFC cites her deposition testimony: "Q: Did you ever ask to take a meal break but your request was denied: A: I've been told to wait, but actually told no, your not allowed to go on your break. No." (Hines Depo at 225:22-25). This ambiguous testimony, without more, does not establish that Hines always received timely, required breaks. This evidence gives rise to a legitimate inference that Plaintiff Hines was told she was "not allowed to go on [] break" at the required time and therefore Plaintiff Hines's claim is typical with respect to the meal and rest period subclasses.[7]

With respect to the closing shift claim, KFC argues that Plaintiff Hines testified that she requested to be paid for the closing shift claim and that her supervisor complied with the request. (Hines Depo. at 247:20-248:6). However, she also testified that she was not compensated for all overtime, although she could not quantify the amount of uncompensated overtime. (Hines Depo. at 250:5-11). While Plaintiff's inability to identify the amount of uncompensated overtime may render this claim somewhat speculative, that it not an issue to be resolved on class certification.

In sum, the court finds that Plaintiff Hines' claims are "reasonably coextensive with those of absent class members." Dukes, 603 F.3d at 613.

Adequacy of Representation

A class representative must be able to "fairly and adequately protect the interests" of all class members. Fed.R.Civ.P. 23(a)(4). Here, Plaintiff Hines possesses the same type of interests and generally suffered the same type of injury as other class members. Moreover, Plaintiff has retained

---

[7] The court acknowledges that the compound and imprecise nature of the questioning at the time of deposition created ambiguities in the testimony, not appropriately resolved on a motion for class certification.

Class Counsel who has extensive experience in litigating class action wage-and-hour claims.

KFC argues that Plaintiff Hines is inadequate to represent the class interests because (1) Plaintiff did not decide to bring the class claims until counsel showed up at her home and asked her questions about KFC's employment policies; (2) Plaintiff did not review the complaint prior to its filing; and (3) Plaintiff has a conflict with other class members because Plaintiff signed a written waiver of her meal periods for shifts between five and six hours. These arguments are not persuasive. Plaintiff Hines also testified that she understands her duties as class representative to "present the case and see that we [the class] [are] compensated for [] missed wages." (Sha Sup. Decl., Exh. 5 at 29:20-30:11). She also understands her duty to communicate with and cooperate with her attorneys. (Id. 31:7-17). The argument that there is a conflict between Plaintiff Hines and other employees who did not sign the waiver of meal breaks for periods between five and six hours does not reach the level of a debilitating conflict. That is particularly true where Plaintiff has retained experienced class counsel who play a pivotal role in prosecuting this case.

In sum, the court concludes that this prerequisite is satisfied.

**Rule 23(b)**

Rule 23(b)(2)

Certification pursuant to Rule 23(b)(2) is appropriate where the Class is subject to common policies or unlawful acts, justifying injunctive relief. Fed.R.Civ.P. 23(b)(2). Where a party seeks both injunctive and monetary relief, Rule 23(b)(2) "does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." Dukes, 603 F.3d at 615 (quoting Fed.R.Civ.P. 23(b)(2) advisory committee's note to 1966 amends., 39 F.R.D. at 69). To determine whether monetary relief predominates, the "district court should consider, on a case-by-case basis, the objective 'effect of the relief sought' on the litigation." Id. at 617 (citations omitted).

> Factors such as whether the monetary relief sought determines the key procedures that will be used, whether it introduces new and significant legal and factual issues, whether it requires individualized hearing, and whether its size and nature - - as measured by recovery per class member - - raise particular due process and manageability concerns would all be relevant, though no single factor would be determinative.

Id.

///

Here, Plaintiff seeks both monetary and injunctive relief. Both types of relief play an important role in obtaining Plaintiff's alleged litigation goals. As stated by Plaintiff Hines, she perceives her overarching responsibility as class representative "to see that we [the class] are compensated for our missed wages." (Hines Depo. at 30:6-9). Plaintiff's counsel characterizes the action as one seeking "to properly provide or compensate Class Members for meal periods and rest breaks, and [to obtain] pay for" off-the-clock work. (Motion at p.1:4-6). Furthermore, the court notes that much of the evidentiary support submitted by the parties, including expert declarations, address potential damages issues in terms of monetary relief, and not in terms of policy or governance issues targeted to ensuring that employees are compensated in accordance with state and federal labor requirements. Based upon this record, the court concludes that Plaintiff's claims for monetary relief (compensatory damages, liquidated statutory damages, attorney's fees and costs) predominate over Plaintiff's claims for equitable relief for each of the three subclasses.

Plaintiff also identifies broad forms of requested injunctive relief to (1) implement adequate training and other safeguards to ensure that the employees are provided with their meal breaks and rest periods; (2) modify the auto pay system to compensate the employees for all required statutorily required premiums; and (3) ensure that all hours worked by the employee are accurately recorded and properly compensated. (Motion at pp20:18-21:3). In light of Plaintiff's testimony and theory of the case, the equitable remedies represent important goals of the litigation. However, they do not predominate over the damages claims because the damages claims form the key procedures to be used by Plaintiff in proving her case.

In sum, the court finds that class certification is not appropriate under Rule 23(b)(2).

Rule 23(b)(3)

A class may be certified pursuant to Rule 23(b)(3) where (1) common questions predominate over any questions affecting only individual members and (2) class resolution is superior to other available methods for the fair and efficient resolution of the issues presented. The objective of this provision is to promote economy and efficiencies in actions primarily seeking monetary relief. Adv. Comm. Note 39 F.R.D. 102 (1966). As there are three separate subclasses, each is discussed in turn.

### a) Missed, Interrupted, and Late Meal Breaks

With respect to the meal break claims, the court concludes that common issues predominate and the class action device is superior to individual determinations. According to Plaintiff, individualized determinations are not required to analyze the meal break issues claim because this claim is subject to a uniform analysis.[8] Plaintiff represents that a review of the time records is sufficient to establish that Class Members were not properly compensated for missed, interrupted, and late meal breaks. The parties also identify related issues concerning the validity of the waivers of a meal break for periods between five and six hours. While not all employees signed written waivers, for those who did purport to waive the meal break after five hours, the arguments in support are common to the subclass members. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1022 (9th Cir. 1998).

The court also concludes that the class action device is superior to individual determinations. As Plaintiff represents that proof of the meal period subclass is uniform and does not require individual testimony, the court concludes that class action treatment of this claim will lead to the fair and efficient resolution of the meal break claim(s).[9]

In sum, the court concludes that the meal break subclass is appropriately certified as a class action under Rules 23(a) and 23(b)(3).

### b) Missed, Interrupted, and Late Rest Periods

With respect to the rest period subclass, the court concludes that common issues predominate over individualized issues and the class action device provides a fair and efficient methods to resolve the claims of the rest period subclass. Plaintiff represents that KFC does not have a policy or procedure to ensure that the employees are compensated for missed, interrupted, or late rest periods

---

[8] The court finds the Woolfson declaration sufficiently probative on whether the meal break class claims are capable of uniform resolution based upon the time cards and payroll records. (Woolfson Decl. ¶¶17-35).

[9] KFC largely argues the merits of this claim: namely, that it provides all required breaks to its employees and that no labor code violations have occurred. The court notes that these merits-based arguments are not properly resolved on a motion for class certification.

1  as required by Cal.Labor Code §225.7. (Griffin Depo. at 85:22-86:4; Estrada Depo. at 54:16-22, 55:5-
2  14). Plaintiff explains that KFC does not maintain regular rest period times. Rather, the employee
3  must request and receive permission from a supervisor prior to taking a rest period. In the event the
4  restaurant is too busy, Plaintiff submits evidence that some rest periods were missed, interrupted, or
5  late. (Barenas Decl. ¶4; Bolden Decl. ¶6; Eldridge Decl. ¶6). In support of the predominance of
6  common issues, Plaintiff's overarching argument is that KFC requires all employees to clock in and
7  out for all rest periods. (Griffin Depo. at 79:19-22; Estrada Depo 42:14-16). In light of the procedures
8  implemented by KFC, Plaintiff argues that the rest period claims are susceptible to a uniform analysis
9  and common proof by reviewing the employee's time records. Based upon this evidentiary showing,
10 the court concludes that a review of the time records is sufficient to establish both liability and
11 damages.

12 In an effort to show that individualized issues predominate, KFC comes forward with evidence
13 to show that managers of its stores use different systems for tracking the rest periods of its employees
14 and therefore individualized issues predominate. For example, in one store, employees utilize a timer
15 to track rest periods rather than clocking in and out (Laguna Depo at 92:13-25); another store uses a
16 dry eraser board to inform employees of their rest periods, (Matthiesen Depo. at 50:25-51:25); and
17 another store uses a "shift planner" or daily schedule to manage employee rest periods. (Dangel Decl.
18 ¶12). As testified to by Plaintiff Hines, not all employees record every rest period. (Hines Depo at
19 167:16-20). As the managers and supervisors at different KFC locations use different means to track
20 rest periods, KFC concludes that individual issues predominate over class-wide claims.

21 KFC's opposition is not persuasive. The fact that a relatively small number of stores employ
22 different methods to track the rest periods of employees at KFC's approximately 250 stores (use of
23 timer, use of a dry eraser board, use of a shift planner), does not mean that individualized methods
24 predominate.[10] From the parties' submissions, it appears that the overwhelming majority of stores use
25 time records to track the employee's rest periods. While a relatively small number of stores use
26 different means, common issues predominate for the rest period subclass.

27 In sum, the court concludes that common issues predominate over individualized issues
28

---

[10] The parties only identify three stores that do not use time records to track rest periods.

such that the class action device will likely provide the anticipated efficiencies and economies.

### c) The Closing Shift

With respect to the closing shift subclass, the court concludes that individualized issues predominate such that the class action device does not provide the anticipated economies and efficiencies. Plaintiff's theory for this subclass is that KFC permitted off-the-clock work by underestimating the amount of time required for the employee to perform nightly closing duties. (Oppo. at p.23:7-12). In support of this claim, Plaintiff submits the declarations of Mr. Woolfson and Dr. Abbott to show that the closing shift claims can be uniformly resolved by reference to alarm company records and statistical analysis. However, neither declaration is sufficient to establish that common questions predominate over individualized determinations such that the class action device is superior to individual actions.

Dr. Abbott, in preparing his testimony, did not review the time records in this action, did not read KFC's store closing procedures, and did not review the complaint. (Abbot Depo. at 18:5-8; 28:9-13; 34:3-5; 61:5-6; 83:9-24). After extensive discovery by the parties, Dr. Abbot declares that a relevant study is "feasible," not that there presently exists a supporting analysis. The court similarly finds that the declarations of Dr. Abbott are not sufficiently probative to demonstrate that the claims are subject to class-wide treatment. The evidentiary record reveals that individualized inquiries of putative class members and KFC supervisors will be required to resolve the closing shift claims.

Plaintiff argues that the only individualized determinations at issue concern the amount of damages and cites numerous authorities, primarily from federal securities law authorities, noting that the "amount of damages is invariably an individual question and does not defeat class action treatment." Blackie v. Barrack, 524 F.2d 891, 905 (9th Cir. 1975). The court notes that statements concerning damages and class actions frequently arise in the federal securities law class action arena where, under the fraud on the market theory, there is a presumption of reliance and therefore no individualized determination (i.e. no need to show direct reliance on the misrepresentation) is required to state a Rule 10b-5 claim. See Basic Inc. v. Levinson, 485 U.S. 224, 243-47 (1988). As Rule 10b-5 liability attaches to publicly disseminated materially misleading statements or omissions, whether the individual investor purchased or sold securities during the class period becomes a ministerial task. Id.

1    In the present context, a KFC employee does not establish liability and damages simply be
2 being a KFC employee. In order to seek compensation for off-the-clock work, the employee must first
3 show that he or she worked off the clock and was not compensated for this time. As Plaintiff fails
4 to present a uniform basis for determining liability, the court concludes that individualized
5 determinations predominate over common issues.

6    In sum, the court concludes that, on the current evidentiary record, individual issues
7 predominate over common issues with respect to the off-the-clock claims such that the class action
8 device will not likely provide the anticipated efficiencies and economies. The court makes this finding
9 without prejudice, subject to a further showing in support of class action treatment of the closing shift
10 claims.

11 **Evidentiary Objections**

12    a. Mr. Woolfson's Declaration

13    KFC objects to the declaration of Mr. Woolfson on the ground that he is not a qualified expert.
14 Mr. Woolfson declares that he has "extensive experience in creating, managing, and analyzing large
15 databases, including payroll, timekeeping, telecommunications, and other proprietary databases."
16 (Woolfson Decl. ¶4; Ct. Dkt. 66-2). Mr Woolfson's company, TelSwitch, Inc. "builds and develops
17 telephonic database service for several major telecommunications companies to manage their billing."
18 Id. ¶2. To qualify as an expert, Plaintiff must demonstrate that Mr. Woolfson has the "knowledge,
19 skill, experience, training, or education" to qualify as an expert. Fed.R.Civ.P. 702. "The issue with
20 regard to expert testimony is not the qualification of a witness in the abstract, but whether those
21 qualifications provide a foundation for a witness to answer a specific question." Berry v. City of
22 Detroit, 25 F.3d 132, 1352 (6th Cir. 1994). As a motion for class certification is not intended to be
23 merits-based, courts need not "uncritically accept all expert evidence . . . offered in support of, or
24 against, class certification. Rather, the question is whether the expert evidence is sufficiently
25 probative to be useful in evaluating whether class certification requirements have been met." Dukes
26 v. Wal-Mart, 222 F.R.D. 189, 191 (N.D. Cal. 2004).

27    While Mr. Woolfson is qualified to provide expert opinions concerning database calculations,
28 the court concludes that Mr. Woolfson's is not a qualified expert to offer opinions on statistical

1 analysis.  Mr. Woolfson acknowledges that he is not a statistician, does not have a college degree,
2 does not have statistical experience and that he could not provide an opinion on statistical matters.
3 (Woolfson Depo. at 28:4-30:12; 27:24; 72:7-73:1' 78:5-7; 81:10-16; 82:6-7; 115:9-22).  The
4 processing of raw data requires a different skill set from, say, a social scientist or statistician who
5 designs studies and interprets raw data to obtain statistically significant results.  The declaration of Mr.
6 Woolfson fails to establish his qualifications with respect to professional research and his knowledge
7 of the field of statistics.

8 While there are deficiencies with respect to Mr. Woolfson's qualifications, the court finds his
9 declaration sufficiently probative on the issue of whether the claims of the meal break subclass are
10 susceptible to a uniform analysis of time cards and payroll records. (Woolfson Decl. ¶17-35).  Based
11 upon Mr. Woolfson's experience and qualifications, his opinions provide support for this fundamental
12 issue asserted by Plaintiff.  The weight of any such evidence, contrasted with the admissibility of
13 evidence, is not an issue for the court to resolve on this motion for class certification.

14 The court does not consider the supplemental Woolfson declaration as sufficiently probative
15 on whether the off the clock claims are subject to a uniform analysis based upon a comparison of the
16 alarm company's time entry and exit records.  As noted by KFC, the supplemental declaration was
17 submitted in reply and therefore KFC did not have the opportunity to adequately reply to the
18 declaration.  Moreover,  the basis for Mr. Woolfson's conclusions are not well-founded: the alarm
19 company's records reviewed occurred well outside the class period, KFC has shown that outside
20 vendors access certain of its locations after hours, and therefore the approach taken by Mr. Woolfson
21 to structure and analyze the data may be suspect, and not all employees left the location at the same
22 time and therefore there is no basis from which to assume that the last exit entry necessarily reflects
23 the time when all employees exited the location.          In sum, the court considers the declaration of Mr.
24 Woolfson for the limited purposes identified herein.

25 b.  Dr.Abbott's Declaration

26 KFC also objects to the declaration of Plaintiff's expert, Robert Abbott, on the ground that his
27 opinions are nothing more than speculation.  Dr. Abbott, an undisputed qualified expert in the
28 statistical and mathematical methods to study human behavior, opines that it is "feasible to draw a
random sample representative of the 13,000 individuals and to collect data through surveys or

interviews from the individuals in the sample that will be representative of the population." (Abbott Decl. ¶6). Dr. Abbott expresses no opinion on whether the data will support Plaintiff's theory of the case. A statement that an appropriate study is "feasible," the court notes, does not affirmatively support Plaintiff's theory that a sample survey will accurately reflect and support the claims of each class member. The court considers Dr. Abbott's expert opinion only to the extent he opines that a survey is "feasible," and not that there presently exists a survey or study supporting Plaintiff's claims.

KFC also comes forward to show that Dr. Abbott, in preparing his expert declaration, did not review the time records of the KFC employees, did not read KFC's store closing procedures, and did not review the complaint. (Abbot Depo. at 18:5-8; 28:9-13; 34:3-5; 61:5-6; 83:9-24). Consequently, without having reviewed the circumstances of the case, Dr. Abbott's testimony concerning the feasibility of future studies is not probative to presently establish that the claims of the meal period, rest period, and closing shift subclasses are subject to common proof.

In sum, the court grants the motion for class certification with respect to the meal break subclass and the rest period subclass, but denies the motion with respect to the closing shift subclass.

**IT IS SO ORDERED.**

DATED: October 22, 2010

_____
Hon. Jeffrey T. Miller
United States District Judge

cc:         All parties